UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHAYA ROTHENBERG,

                                    Plaintiff,

      -against-

ARIE PLUCZENIK,

                                   Defendant.

------------------------------------------------------------x

No. 21 Civ. 2009

**COMPLAINT AND JURY DEMAND**

Plaintiff Chaya Rothenberg, by and through her attorneys, Cuti Hecker Wang LLP and Allred Maroko & Goldberg, for her Complaint alleges as follows:

## NATURE OF THE ACTION

1.     Chaya Rothenberg was one of sixteen children raised in an ultra-Orthodox Jewish family in Rockland County, New York. She was sheltered from the non-religious world as a child. In particular, she learned nothing about sex or sexual activity. The topic was forbidden and never discussed in her home.

2.     Chaya's innocence and naivete left her especially unprepared for the horrific and escalating sexual abuse perpetrated by her brother-in-law, defendant Arie Pluczenik. The abuse began in approximately 2003, when Chaya was only twelve years old, and continued for years.

3.     Defendant Pluczenik is from a prominent, wealthy, and well-connected family. Chaya's parents and siblings trusted and respected Pluczenik when he joined the family, in part because of his family's prominence and wealth, and Pluczenik apparently felt empowered by that trust. Pluczenik egregiously abused his status by sneaking into Chaya's room on numerous occasions while she slept, exposing himself and rubbing his penis against her, and eventually raping her.

4. Chaya was overwhelmed, terrified, and confused by the abuse. She was only a child and had no idea what was happening. She knew that something felt terribly wrong, but lacked the words or knowledge to comprehend what she was experiencing.

5. These traumatic and recurring episodes of abuse devastated Chaya emotionally and psychologically. In the years after the abuse finally stopped, when Chaya was old enough to recognize that she had been sexually assaulted and tried to seek help from others in her community, the effects of the abuse were debilitating. Chaya attempted suicide on multiple occasions, engaged in self-harm and other dangerous behavior, and required in-patient psychiatric treatment repeatedly. For years, Chaya's mental health providers have documented her history of sexual abuse and identified the direct link between that misconduct and her severe psychological injuries. Despite Chaya's multiple attempts to confront her abuse and seek justice for the harm she suffered, her abuser has remained shielded by his wealth and power.

6. This lawsuit seeks redress for the despicable sexual abuse that Defendant Pluczenik inflicted on Chaya, including the derailment of her life and irreparable injuries that he caused her to suffer.

## PARTIES

7. Plaintiff Chaya Rothenberg is now an adult female who resides in Los Angeles, California. She was a minor child during the incidents of abuse at issue in this lawsuit, which occurred in the State of New York from approximately 2003 to approximately 2009.

8. Defendant Arie Pluczenik is an individual who resides in Antwerp, Belgium.

## JURISDICTION AND VENUE

9. This action arises under New York common law and the Rockland County Administrative Code.

10. The jurisdiction of this Court is predicated upon 28 U.S.C. § 1332 because the parties are the citizen of a state and of a foreign state and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

11. The acts complained of occurred primarily in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## JURY DEMAND

12. Plaintiff demands a trial by jury.

## FACTS

13. Chaya was raised in Monsey, New York, within an insular Chasidic Jewish community. She has fifteen siblings, twelve of whom are older than her, and three of whom are younger.

14. One of Chaya's sisters, who is approximately ten years older than Chaya, married Defendant Pluczenik.

15. The marriage was a cause for celebration in Chaya's family, for many reasons. Among them, Chaya's family has modest means, and lives hand-to-mouth in Rockland County. Defendant Pluczenik, by contrast, comes from a family in Belgium with a successful diamond business.

16. Chaya's parents were proud of the union, and honored whenever Pluczenik was in their home. They trusted him implicitly and always gave him the benefit of the doubt.

17. The first incident of abuse that Chaya remembers occurred in approximately 2003, when she was only twelve years old. One of Chaya's brothers also married a woman from Belgium, and Chaya's family traveled to Europe for the celebration. By then, Chaya's sister had

married Pluczenik.  Pluczenik convinced Chaya's parents that it would be a good idea for her to stay in an apartment with him and her sister the night before Chaya left Belgium.

18.	Chaya spent the night in a room with one of her nieces or nephews, who was a baby at the time.  In the middle of the night, she felt somebody next to her in bed and realized that it was Pluczenik.  She was very confused.

19.	Pluczenik pulled off Chaya's undershirt and then laid down on top of her.  The abuse felt like it lasted forever, but eventually, Pluczenik left Chaya's bed.

20.	Chaya had never discussed her own private body parts when growing up, let alone the body parts of a man.  She did not understand what had happened.

21.	The abuse continued regularly in the years after this incident.  Pluczenik and Chaya's sister routinely traveled to New York for holidays and other family occasions.

22.	Pluczenik would also visit New York alone for business and surprise Chaya's family by coming over.  When he visited, he usually stayed with Chaya's parents.

23.	Chaya shared a room with one of her sisters.  Pluczenik would enter their shared room at night and approach Chaya's bed.

24.	Chaya distinctly recalls Pluczenik's prelude to the abuse:  before getting into Chaya's bed, he would tickle Chaya's feet to test whether she was asleep.  Whenever Chaya felt the tickling, she froze in fear, remained still, and pretended to be asleep.  She had no idea what else to do because she was overwhelmed by fear and shame.

25.	Pluczenik would begin by removing any clothing that Chaya wore on top, before working his way down from there and removing Chaya's underwear.  He would then remove his penis and rub it against Chaya's genital area.

4

26. During multiple incidents of abuse in Rockland County, Pluczenik put the tip of his penis inside of Chaya's vagina.

27. Pluczenik appeared to tailor his behavior to how likely he felt it was that somebody would walk in on him and Chaya or that Chaya's sister would wake up and see what he was doing. If he felt nervous, he would moderate the abuse. If he felt secure, he would escalate.

28. At the end of many incidents of abuse, Chaya felt something wet on her body. She had no idea what it was, but the substance felt disgusting.

29. On at least one occasion, Pluczenik thought that he heard somebody approaching the room where he was abusing Chaya. He directed Chaya to leave the bedroom quickly and hide in the boiler room so that nobody would see her.

30. Eventually, Pluczenik started abusing Chaya in other parts of the house. He would call her downstairs or wherever he was located under the pretext of needing her to show him where something was located (for example, toiletries or similar household items). Once Chaya was close to him, he would compliment Chaya and say kind things, telling her, for example, that she was attractive and skinny.

31. During these encounters, Pluczenik would put his hands up Chaya's shirt, inside of her bra, and fondle her breasts. He also would kiss her.

32. Chaya felt utterly hopeless and powerless during these moments. She sometimes threatened to yell and tell her parents, but Pluczenik knew she was too afraid to say anything and that Chaya's parents would not support her even if she did.

33. When Pluczenik came to visit New York with Chaya's sister and their children, he generally stayed for a few weeks at a time. During many visits, he abused Chaya on multiple

occasions. The abuse occurred even when Pluczenik stayed with a neighbor; he would summon Chaya to come over and help with his children, and then abuse her once she was there.

34. When Chaya was fifteen years old, she confided in one of her sisters-in-law about the abuse. She was scared to share any details about what happened, but Chaya told her about Pluczenik playing with her hair, and the sister-in-law coaxed more information from Chaya.

35. The sister-in-law promised not to tell anyone, but after Chaya confided in her, Chaya received an angry call from Pluczenik who informed Chaya that a rabbi in Israel had demanded that he give charity because of what Chaya's sister-in-law had told the rabbi about the abuse. Pluczenik demanded to know what Chaya had said, and made clear that he disapproved of her actions.

36. Chaya was demoralized by this experience. She felt betrayed by her sister-in-law, who had revealed their confidential discussion, and also by the unknown rabbi in Israel, who instead of taking steps to protect Chaya, used her experience as an excuse for donations.

37. Chaya felt that she could not trust anybody and had nowhere to turn to for help. After this experience, she did not tell anybody else about the abuse for several years. Pluczenik took advantage of her fear and continued to abuse her during that period.

38. Over the years, Pluczenik became increasingly proactive in pursuing Chaya. In the beginning, the abuse occurred when Pluczenik was otherwise in the house, and did not involve advanced planning. Eventually, Pluczenik took steps to increase his access to Chaya. For example, he set her up with an email address so that he could write her and sent her text messages on a phone that Chaya obtained when she was a teenager.

39. On one occasion, when Chaya was seventeen, Pluczenik paid for a hotel room for Chaya before a family wedding in Brooklyn; Pluczenik showed up at the room unexpectedly. Chaya, afraid of Pluczenik's intentions, left the hotel and stayed with a relative.

40. Pluczenik also made efforts to groom Chaya and make her feel positive toward him. He offered her gifts, including a bracelet and ring, and urged her to think of him when she looked at them.

41. The final incident of abuse occurred in Belgium when Chaya was approximately nineteen years old. During this encounter, Pluczenik raped Chaya and engaged in sexual intercourse with her.

42. After this assault, Chaya confided in a rabbi in Monsey about what Pluczenik had done to her. The rabbi attempted to help Chaya. Upon information and belief, he also told Pluczenik never to contact Chaya again.

43. As Chaya began to confront the abuse and appreciate the nature of what she had endured, her mental state deteriorated. She began to feel that she had no worth or value, that she was just an object that a powerful man could do anything to. She blamed herself, even though Pluczenik, a hero to her family, had abused her and preyed upon her as a sheltered child and his sister-in-law.

44. Chaya attempted suicide shortly after Defendant's abuse stopped. She began seeing a therapist and psychiatrist, and has continued receiving intensive mental health treatment for more than a decade.

45. On multiple occasions, Chaya has been hospitalized for psychiatric reasons. She has cut herself and engaged in other self-harm. She has made further suicide attempts and

expressed suicidal thoughts and desires. She has also engaged in other dangerous and compulsive behavior.

46. In addition to outpatient counseling and psychiatric treatment and inpatient hospitalization, Chaya has stayed on multiple occasions at rehabilitation or treatment facilities to address her significant mental health challenges.

47. Chaya presently lives at a rehabilitation facility in California, where she receives frequent counseling and other supportive services.

48. Among other psychological conditions, Chaya has been diagnosed with PTSD caused by the sexual abuse.

49. This action is timely because it falls within New York CPLR 214-g and is brought within the revival period set forth in that section. The claims brought herein allege intentional acts for physical, psychological, and other injury suffered as a result of conduct that would constitute sexual offenses as defined in Article 130 of the New York Penal Law, and such acts were committed against Chaya when she was less than eighteen years of age.

50. Specifically, the conduct that gives rise to Chaya's claims herein would constitute a violation of, *inter alia*, New York Penal Law Sections 130.52 (Forcible Touching), 130.65 (Sexual Abuse in the First Degree), and 130.80 (Course of sexual conduct against a child in the second degree).

**FIRST CAUSE OF ACTION**
**(Gender-Motivated Violence – Rockland County Administrative Code)**

51. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

52. Rockland County Administrative Code § 279-4 establishes a civil cause of action for "any person claiming to be injured by an individual who commits a crime of violence motivated by gender."

53. Defendant Pluczenik engaged in nonconsensual sexual activity with Chaya beginning when she was only twelve years old.

54. Pluczenik's sexual assaults of Chaya constituted a felony against the person under state or federal law.

55. Upon information and belief, Pluczenik's sexual assaults of Chaya were committed, at least in part, because of Chaya's gender, and because of an animus based on her gender.

56. As a direct result of Defendant's unlawful conduct, Plaintiff sustained physical injury and substantial emotional harm.

57. Accordingly, under Rockland County Administrative Code § 279-4(A)(1) and (3), Plaintiff is entitled to, *inter alia*, "[c]ompensatory and punitive damages" and "[a]ttorneys' fees and costs."

## SECOND CAUSE OF ACTION
### (Battery)

58. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

59. In committing the acts described above, Pluczenik intentionally subjected Plaintiff to bodily contact that was offensive in nature.

60. As a result of Defendant's actions, Plaintiff suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Assault)

61. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

62. In committing the acts described above, Pluczenik engaged in physical conduct that placed Plaintiff in imminent apprehension that he would harm her.

63. As a result of Defendant's actions, Plaintiff suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

64. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

65. In committing the acts described above, Pluczenik engaged in extreme and outrageous conduct.

66. In doing so, Pluczenik acted with the intent to cause and/or disregard of a substantial likelihood of causing Plaintiff to suffer severe emotional distress.

67. As a direct result of Pluczenik's actions, Plaintiff suffered severe emotional distress.

68. As a result of Defendant's actions, Plaintiff suffered damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the Defendant as follows:

a.  Ordering Defendant to pay compensatory damages in an amount to be determined at trial;

b.  Ordering Defendant to pay punitive damages in an amount to be determined at trial;

c.  Ordering Defendant to pay reasonable attorneys' fees and costs and interest; and

d.  Awarding such other and further relief, including all disbursements and pre- and post-judgment interest, as the Court may deem just and proper.

Dated:  New York, New York
        March 9, 2021

                                                CUTI HECKER WANG LLP

                                                By:   /s/Alexander Goldenberg
                                                      Mariann Meier Wang
                                                        Eric Hecker
                                                        Alexander Goldenberg
                                              305 Broadway, Suite 607
                                              New York, New York 10007
                                              (212) 620-2600

                                              Gloria Allred
                                              ALLRED MAROKO & GOLDBERG
                                              6300 Wilshire Boulevard, Suite 1500
                                              Los Angeles, California 90048
                                              (323) 653-6530

                                              *Attorneys for Plaintiff Chaya Rothenberg*